# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| PRAIRIE ISLAND INDIAN COMMUNITY, | Case No. 20-CV-1234 (NEB/TNL) |
| Plaintiff, | |
| v. | ORDER ON PARTIAL MOTION TO DISMISS |
| RADISSON HOTELS INTERNATIONAL, INC. and TREASURE ISLAND, LLC, | |
| Defendants. | |

The Prairie Island Indian Community (the "Community"), a federally-recognized Indian tribe, brought this trademark action under the Lanham Act and Minnesota state law against Radisson Hotels International, Inc. ("Radisson"), and Treasure Island, LLC ("TI") (collectively, "Defendants"). The Community alleges that TI's booking affiliation with Radisson constitutes infringement of its trademarks.[1] Defendants move for a partial dismissal of the Community's claims. (ECF No. 19.) For the reasons that follow, the Court grants the motion and dismisses those claims without prejudice.

---

[1] The Community alleges that it possesses both federally-registered trademarks as well as service marks under Minnesota law. The Court refers to these collectively as "trademarks."

## BACKGROUND

### I. The Parties and The Treasure Island Marks.

The Community owns and operates Treasure Island Resort & Casino in Red Wing, Minnesota. (ECF No. 1 ("Compl.") ¶10.)) The Community owns valid registered trademarks on various phrases involving the words "Treasure Island" (the "Treasure Island Marks") for use in the commercial areas of casino and hotel services, restaurants, concert facilities, and exhibition sites, among others. (*Id.* ¶¶ 11–17.) The Community is the sole owner of the Treasure Island Marks and it alleges that the Treasure Island Marks are famous and distinctive. (*Id.* ¶¶ 18, 32–36.)

TI is a limited liability company that owns and operates a Las Vegas casino also named "Treasure Island."[2] (*Id.* ¶¶ 5–6, 49.) Radisson owns and operates hotels that it promotes under the name "Radisson." (*Id.* ¶¶ 9, 49.)

### II. The Prior Litigation and TI's Rights

Several years ago, the Community and TI engaged in extensive litigation before the United States Patent and Trademark Office and the Trademark Trial and Appeal Board over ownership of, and rights to use, the Treasure Island Marks. (*Id.* ¶¶ 19–20.) The Trademark Trial and Appeal Board issued a decision in the Community's favor, and the Community and TI settled the case prior to final resolution before the Court of

---

[2] Prior to 2009, TI existed as Treasure Island Corp.; TI is that entity's successor in interest. (Compl. ¶¶ 7–8.) The Court refers to both entities as "TI."

2

Appeals for the Federal Circuit. (*Id.* ¶¶ 20–24, 27.) One of the terms of the settlement was that the Community granted TI a "perpetual, non-cancellable, and exclusive license to use marks including and comprising the term 'Treasure Island' in any manner or form for the use in the hotel, casino, and/or resort industry." (*Id.* ¶ 29.) The settlement requires the Community to police the hotel, casino, and resort industries for infringement of the Treasure Island Marks. (*Id.* ¶ 30.) The Community has not granted TI any right to grant, license, or sublicense use of the Treasure Island Marks to others, nor has it granted Radisson any right to use the Treasure Island Marks. (*Id.* ¶¶ 41–42, 67–70.)

Now, years after the settlement, TI and Radisson are launching a relationship under which Radisson exercises control over the Treasure Island Marks and uses the Treasure Island Marks in connection with the Radisson Mark without the Community's consent. (*Id.* ¶¶ 47–48.)

### III. TI and Radisson Create a Booking Affiliation

In July 2019, Defendants announced TI's intent to affiliate with Radisson, publicly stating that TI would join Radisson as "Treasure Island—TI Hotel and Casino, a Radisson Hotel." (*Id.* ¶ 49.) The Community sought information from Defendants regarding the terms of this affiliation, based on its belief that the affiliation might violate its rights in the Treasure Island Marks. Defendants did not respond to these inquiries. (*Id.* ¶¶ 50–59, 74.)

3

In December 2019, Defendants officially launched "Treasure Island—TI Hotel & Casino, a Radisson Hotel." (*Id.* ¶¶ 60–61.) Radisson's website now includes a reference to "Treasure Island—TI Las Vegas" in promoting hotel and casino services. (*Id.* ¶¶ 62–64.) The Community did not consent to Radisson's use of the Treasure Island Marks, nor has it ever promoted its services in connection with Radisson. (*Id.* ¶¶ 65–69.) The Community alleges that Radisson's use of the marks will harm its interest in the Treasure Island Marks. (*Id.* ¶¶ 77–80.)

### IV. Claims and Procedural History

The Community brings twelve claims against Defendants. Counts One and Two allege federal trademark infringement by Defendants in violation of the Lanham Act, 15 U.S.C. Section 1114(1). (*Id.* ¶¶ 81–93.) Counts Three and Four assert that Defendants' actions have diluted the Treasure Island Marks in violation of 15 U.S.C. Section 1125(c). (*Id.* ¶¶ 94–107.) Count Five alleges that Defendants have engaged in unfair competition in violation of 15 U.S.C. Section 1125(a). (*Id.* ¶¶ 108–14.) Count Six claims that TI has breached the Settlement Agreement by affiliating with Radisson. (*Id.* ¶¶ 115–25.) Count Seven seeks specific performance of the Settlement Agreement from TI. (*Id.* ¶¶ 126–30.) Counts Eight and Nine are state law analogues of Counts One and Two, asserting Minnesota law trademark infringement against Defendants in violation of Minnesota Statutes Section 333.28. (*Id.* ¶¶ 131–44.) Counts Ten and Eleven are also state law analogues, but of Counts Three and Four, and allege trademark dilution in violation of

4

Minnesota Statutes Section 333.285. (*Id.* ¶¶ 145–58.) The Community's twelfth count is a state law unfair competition claim against Defendants. (*Id.* ¶¶ 159–65.)

At issue here are Counts Three, Four, Ten, and Eleven (the dilution claims under the Lanham Act and Minnesota state law). Defendants have moved to dismiss these claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 19.)

## ANALYSIS

The Court has jurisdiction over the Community's federal claims under 15 U.S.C. Section 1121 and 28 U.S.C. Sections 1331 and 1338(a) and (b). The Court has supplemental jurisdiction over the Community's state law claims under 28 U.S.C. Section 1367.

### I.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted). At this stage in the litigation, the Court must accept as true all factual allegations in the Complaint and draw all reasonable inferences in the plaintiff's favor. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009). Factual allegations in the

Complaint must be sufficient to "raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citation omitted). "'[T]hreadbare recitations of the elements of a cause of action supported by mere conclusory statements' are not entitled to a presumption of truth" when considering a Rule 12(b)(6) motion. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (*en banc*) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Court's determination of whether a plaintiff has met this standard is "context-specific" and requires it to "draw on its judicial experience and common sense." *Id.* (quotation omitted).

## II. Trademark Law and Dilution

The Lanham Act provides the owner of a famous and distinctive trademark with a cause of action against an entity who uses a mark or trade name in commerce in a way "that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."[3] 15 U.S.C. § 1125(c)(1). Dilution by blurring is an "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." *Id.* § 1125(c)(2)(B). The Lanham Act provides a list of nonexhaustive factors for courts to use in determining whether blurring exists. *Id.* By contrast, dilution by tarnishment is an "association arising from the similarity between

---

[3] The Lanham Act also provides remedies for other trademark violations, but none are relevant to this motion.

a mark or trade name and a famous mark that harms the reputation of the famous mark." *Id.* § 1125(c)(2)(C).

Minnesota law provides similar protections against dilution: "the owner of a mark that is famous in this state may . . . seek an injunction against another person's commercial use of a mark or trade name, if the use . . .causes dilution of the distinctive quality of the mark." Minn. Stat. § 333.285(a).

The parties agree that the same standards that govern the Community's Lanham Act claims also govern the Community's Minnesota law dilution claims. (ECF No. 21 at 19–20; ECF No. 31 at 26.)[4] The Court agrees that this is the case. *See DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 935 n.3 (8th Cir. 2003) ("The district court concluded, and the parties appear to concede, that the state [trademark] claims are coextensive with the federal [trademark] claims. As such, we do not discuss them independently."). Accordingly, the Court's analysis of the Community's Lanham Act claims is identical to its analysis of the Community's Minnesota law dilution claims.

### III.   Dilution by Blurring

Defendants contend that the Community's allegations are insufficient to support a claim of dilution by blurring for two reasons. First, dilution by blurring occurs generally in cases where the complained-of use is for dissimilar goods or services as the use of the

---

[4] For all cites in this Order, the Court uses the ECF pagination, rather than the pagination on the document itself.

famous mark—here, there is no blurring because Defendants and the Community provide similar services. Second, the Community has failed to allege facts that plausibly state a claim that Defendants' actions impair the distinctiveness of the Treasure Island Marks.

### A.   *Similar Goods and Services*

Defendants assert that the Community's blurring claim must fail because blurring can only occur when similar marks are used in connection with different goods or services; because Defendants and the Community are engaged in providing similar services—hotel, casino, and resort services—there can be no blurring. (ECF No. 21 at 15–17.) In support of this contention, Defendants cite *Luigino's, Inc. v. Stouffer Corp.*, which stated that dilution "occurs when consumers associate a famous mark that has traditionally identified the mark holder's goods with a new and different source." 170 F.3d 827, 832 (8th Cir. 1999). Under *Luigino's*, blurring "[n]ormally" occurs where "similar marks are used on dissimilar goods." *Id.* at 833 (citation omitted). According to Defendants, because they and the Community are providing similar services, there can be no blurring.

This argument stumbles for two reasons: first, *Luigino's* did not categorically state that blurring could only occur between dissimilar goods or services. *Id.* Second, and more importantly, the anti-dilution statute at issue in *Luigino's* has since been amended. *See* Trademark Dilution Revision Act of 2006, Pub. L. No. 109–312, § 2, 120 Stat. 1730 (2006)

(amending 15 U.S.C. § 1125). The new statute explicitly states that blurring may occur even in the absence of competition. 15 U.S.C. § 1125(c)(1). Accordingly, the fact that Defendants and the Community provide competing services does not categorically bar the Community's blurring claim.

B.  *Failure to Plausibly State a Blurring Claim*

Defendants' second argument, that the facts of the Complaint do not state a plausible blurring claim, fares better. Defendants cite *Luigino's* as establishing a three-part test for determining whether blurring has occurred: (1) the plaintiff must have a famous mark; (2) the defendant must have begun using a similar or identical mark after the plaintiff's mark became famous; and (3) the defendant's mark dilutes the distinctive quality of the plaintiff's mark by causing consumers to associate the two. (ECF No. 21 at 15–16 (citing 170 F.3d at 832). Defendants concede the first two elements. (*Id.* at 16.) Although the analysis in *Luigino's* is instructive, the Lanham Act requires the Court to "consider all relevant factors," including the following: (1) how similar the two marks are; (2) how distinctive the famous mark is; (3) how exclusive the famous mark owner's use of the mark is; (4) how recognizable the famous mark is; (5) the intent of the user of the allegedly-dilutive mark; and (6) the existence of any actual association between the marks. 15 U.S.C. § 1125(c)(2)(B). Those six factors form the starting point of the Court's analysis, but it considers other factors as relevant. One such relevant factor is whether the defendant's mark is likely to impair the distinctiveness of the famous mark. *Luigino's*, 170

9

F.3d at 832; *see* J. Thomas McCarthy, *4 McCarthy on Trademarks and Unfair Competition*, § 24:120 (5th ed. 2020) ("McCarthy") (explaining that the Lanham Act's list of factors is incomplete because "none of the factors directs attention to the crucial issue: is there a likelihood that this defendant's mark is likely to be a use that 'impairs the distinctiveness of the famous mark?'"). With these factors in mind, the Court considers the allegations that the Community has made as to dilution.

Defendants do not contest, for purposes of this motion, the first two *Luigino's* blurring factors (similarity and fame), which correspond with the first two Lanham Act factors (similarity and distinctiveness) are present here. (ECF No. 21 at 15–16 n.7.) The third element of the blurring test, exclusive use, does not weigh in favor of a conclusion that the Community has stated a claim for blurring because TI has been using the Treasure Island Marks with the Community's permission. (Compl. ¶ 29); McCarthy, *supra* § 24:120 (stating that "a mark that is merely one of several identical or very similar marks is already 'diluted'"). The fourth factor, degree of recognition of the mark, weighs neither in favor of the Community nor in favor of Defendants. The Complaint is devoid of factual allegations that show how strong or how widely recognized the Treasure Island Marks are. Likewise, as to the fifth and sixth factors, the Complaint contains no factual allegations that Defendants intended to create an association between the Community and Radisson in the minds of consumers through affiliating or that there is an actual association in the mind of consumers between the Community and Defendants. Finally,

the Complaint is bare of any allegation that could permit the Court to infer that—even assuming consumers do form an association between the Community and Defendants through Defendants' use of the Treasure Island Marks—such an association would impair the distinctiveness of the Treasure Island Marks. The Complaint merely alleges that Defendants' actions "have diluted and . . . are likely to continue to dilute the distinctive quality" of the Treasure Island Marks. (*E.g.*, Compl. ¶ 97.) This is exactly the sort of "threadbare recitation[] of the elements of a cause of action supported by mere conclusory statements" that cannot support a plausible claim for relief. *Zink*, 783 F.3d at 1098. The Community has pleaded no factual matter, even when all reasonable inferences are drawn in its favor, for the Court to consider it plausible that Defendants' actions have diluted, or are likely to dilute, the Treasure Island Marks. Although the first two factors weigh in favor of the Community, with no allegations demonstrating a likelihood that the distinctiveness of the Treasure Island Marks will be impaired, the Community has failed to state a Lanham Act blurring claim.

Accordingly, the Court dismisses Counts Three and Four to the extent they seek relief for trademark dilution by blurring. Because the claims are not categorically foreclosed, the dismissal is without prejudice.

### IV.     Dilution by Tarnishing

Defendants maintain that the Community has failed to plead a plausible claim of dilution by tarnishment because the Complaint contains no allegations that the affiliation

between TI and Radisson will harm the reputation of the Treasure Island Marks. In reply, the Community contends that it has adequately pled a tarnishment claim because the Community neither seeks nor desires an association with Radisson. Because the Community has pled no factual allegations supporting a plausible claim that Defendants' actions will harm the reputation of the Treasure Island Marks, the claims fail.

The essential element of a tarnishment claim is that the association with the defendant's mark "harms the reputation of the famous mark" through degrading or diluting its distinctive quality. 15 U.S.C. § 1125(c)(2)(C); *Minn. Mining & Mfg. Co v. Rauh Rubber, Inc.*, 943 F. Supp. 1117, 1131–32 (D. Minn. 1996). This usually occurs when the famous mark is linked to situations where it would appear in an "unwholesome or degrading context," or where "the goodwill and reputation of a plaintiff's trademark is linked to products which are of shoddy quality or which conjure associations that clash with the associations generated by the owner's lawful use of the mark." *Minn. Mining & Mfg. Co.*, 943 F. Supp. at 1132 (quotations omitted). The Community's allegations as to tarnishment, like its allegations as to blurring, are threadbare. (Compl. ¶¶ 98, 105, 149, 156 (alleging that Defendants' actions "have tarnished and, unless enjoined, are likely to continue to tarnish" the Treasure Island Marks).)

Assuming, for the purposes of this motion, that the Treasure Island Marks are famous, the Community's claim still fails because it has not alleged any facts that make it plausible that Defendants' actions will harm the reputation of the Treasure Island

Marks. The Community has alleged no facts plausibly establishing that Defendants' actions place the Treasure Island Marks in contexts that are "unwholesome or degrading," that Radisson's hotel services are of "shoddy quality," or that any use by Radisson of the Treasure Island Marks "conjures associations that clash with the associations generated by the owner's lawful use of the mark." *Minn. Mining & Mfg. Co.*, 943 F. Supp. at 1132. Although the Community attempts to insert such associations in its brief (*see* ECF No. 31 at 22–24 (arguing that Radisson's use of the Treasure Island Marks impairs the Community's branding of its hotel and casino as independent and not associated with other hotels and casinos), facts raised in briefings, but that appear nowhere in the pleadings, are not properly before the Court and cannot be considered in ruling on a Rule 12(b)(6) motion. *Cf. Welk v. GMAC Mortg. LLC*, 850 F. Supp. 2d 976, 990 (D. Minn. 2012) ("[Plaintiff's] argument appears nowhere in his pleadings . . . and it is not properly before the Court.").

Because the Community has failed to plead a requisite element of a Lanham Act tarnishment claim, the Court dismisses Counts Three and Four to the extent that they seek relief for dilution by tarnishment of the Treasure Island Marks. As the Community's claims are not categorically barred, the dismissal is without prejudice.

### V.     The State Law Claims

As noted above, the same standard that governs Lanham Act dilution claims also applies to Minnesota law claims. *DaimlerChrysler AG*, 315 F.3d at 935 n.3. Just as the

Community has failed to state Lanham Act blurring and tarnishment claims, it has likewise failed to state those same claims under Minnesota law. Accordingly, the Court dismisses Counts Ten and Eleven without prejudice.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' partial motion to dismiss (ECF No. 19) is GRANTED; and

2. Counts Three, Four, Ten, and Eleven are DISMISSED WITHOUT PREJUDICE.

Dated: December 21, 2020

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge